UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI R. PENNEWELL,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>          Defendant. | Case No. 1:12-cv-01921-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Toni Pennewell ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income under Title XVI of the Social Security Act.[1] The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 9).

# FACTS AND PRIOR PROCEEDINGS[2]

In 2009, Plaintiff filed an application for supplemental security income, alleging disability beginning July 17, 2007. AR 57. Plaintiff's application was denied initially and on reconsideration AR 29, 37. Subsequently, Plaintiff requested a hearing before an ALJ. AR 45. ALJ Laura Speck Havens held a hearing on February 10, 2011, and issued an order denying benefits on June 7, 2011. AR 18-26. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on September 28, 2012. AR 5-9. This appeal followed.

**Plaintiff's Testimony**

ALJ Havens held a hearing on February 10, 2011 in Stockton, California. Plaintiff appeared and testified, she was represented by attorney Jeffrey Milam.

Plaintiff was born on December 25, 1959 and was 51 years old at the time of the hearing. AR 467. Plaintiff lives with her husband; she has a high school diploma, and she can perform simple arithmetic including adding and subtracting. AR 468. Plaintiff claims that her disability began after a trip and fall that occurred at work. AR 468. She suffers from a herniated disk, carpal tunnel, and high blood pressure. AR 468. In the twelve months preceding the hearing, Plaintiff saw her primary care physician on two occasions. AR 471. Plaintiff's treating physician currently prescribes Hydrocodone, Carisoprodol, Omeprazole, and Metroprolol for Plaintiff's impairments. AR 471. She claims that the medications make her drowsy and the Norco causes constipation. AR 471. Although her medications do not relieve her symptoms, Plaintiff continues to take them to in order to comply with her physician's instructions. AR 472.

As a result of her impairments, Plaintiff contends that she can only sit, walk, or stand for ten minutes at a time. AR 471. The most she can lift is five pounds. AR 472. Plaintiff experiences a burning sensation in her lower back that is constant; rating it a ten on a scale of one to ten with ten being the worst. AR 472. She reported that her doctor recommended surgery but that she does not have medical coverage. AR 473. Plaintiff also uses a heating pad approximately

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

eight hours a day while lying down. AR 474. She stated that she tried therapy and it did not work. AR 475. She also had surgery on her right hand, but claims it did not improve her symptoms only making them worse.[3] AR 475.

When asked about her daily activities, Plaintiff said that she wakes at 7:00am every day. AR 469. Plaintiff cannot bathe herself or perform household chores such as cooking, mopping, sweeping, washing the dishes or doing the laundry. AR 469. Plaintiff, however, can make the bed, go grocery shopping, and drive up to ten miles. AR 469-470. Plaintiff reported that she watches television for ten hours a day while lying down. AR 470-471. Plaintiff also has trouble sleeping; she sleeps approximately four hours at night. AR 471.

**Medical Record**

The entire medical record was reviewed by the Court. AR 120-447. The relevant sections of the reports are detailed below.

### (a)  *Dr. Paul Rose, D.O., Treating Physician*

Dr. Paul Rose, D.O., is Plaintiff's treating physician. On May 19, 2008, Dr. Rose saw Plaintiff for a physical exam. AR 224. At that exam, Plaintiff was diagnosed with degenerative disk disease of her lower back and neck. AR 225. One year later, on June 25, 2009, Dr. Rose evaluated Plaintiff for pain in her back and legs. AR 187-189. She was advised to continue taking her medications and to return for a follow-up if her symptoms worsened or did not improve within 15 days. AR 189. On April 8, 2010, Dr. Rose completed a functional questionnaire for Plaintiff. AR 276-277. Dr. Rose reported that Plaintiff's medical conditions would "probably" preclude her from performing any full-time work at any exertional level. AR 276. He opined that Plaintiff could only sit, stand, or walk for two hours in an eight hour work day and that she must lie down on and off for ten to twenty minutes at a time. AR 277. He also concluded that Plaintiff could frequently lift five to ten pounds and could only handle, feel, or grasp for ten minutes at a time. AR 277. Plaintiff was completely excluded from pushing or pulling. AR 277. He listed degenerative disk disease of the neck and back and carpal tunnel syndrome as his basis for these conclusions. AR 276.

---

[3]  Plaintiff also testified to issues relating to digestion and arthritis but these conditions are not listed as impairments.

**(b)** *Dr. Umer Malik, M.D., Consultative Examiner*

On March 22, 2011, Dr. Umer Malik saw Plaintiff for a comprehensive internal medicine evaluation. AR 430. Dr. Malik noted that Plaintiff could walk to the exam table, though very slowly and gradually. AR 432. She was able to remove her shoes and get on the exam table. AR 432. However, Plaintiff was non-compliant when Dr. Malik asked her to put her shoes back on without assistance and when he asked her to lie down on the exam table. AR 432. Dr. Malik reported that Plaintiff said she could not perform any of the coordination/station/gait maneuvers because she had not taken her medicine and it was going to be too painful. AR 433. Dr. Malik attempted all other range of motion maneuvers but Plaintiff was unable to comply because of her alleged pain. AR 434.

Ultimately, Dr. Malik found that despite her complaints, there were no muscle spasms, crepitus, effusions, deformities, or trigger points identified on her back or her hands. AR 434. Motor strength and muscle bulk and tone maneuvers were also not fully completed due to Plaintiff's non-compliance. AR 434. Dr. Malik opined that Plaintiff could sit, stand, or walk for up to six hours in an eight hour work day, carry 20 pounds occasionally and 10 pounds frequently, she could also frequently engage in manipulative activities such as reaching and handling. AR 435. Plaintiff could occasionally climb and balance and frequently stoop, kneel, crouch, and crawl. AR 435. Plaintiff reported to Dr. Malik that she sometimes uses a cane even though she did not take it to the exam. He determined that if she did use one, it would only be necessary for long and uneven terrains. AR 435.

**(c)** *Dr. M. Friedman, M.D., and Dr. I. Ocrant M.D., Non-Treating Sources*

On July 15, 2009, Dr. Ocrant reviewed Plaintiff's medical records. AR 271-272. He noted that the objective evidence showed minimal pathology and that Plaintiff's "records show obvious symptom exaggeration." AR 272. Dr. Friedman reviewed Plaintiff's records on December 24, 2009. AR 257-261, 273-374. He found Plaintiff to be capable of light work. AR 274. He also noted that Plaintiff's complaints were not fully credible given the minimal objective findings. AR 274.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-19. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 12, 2009. AR 20. Further, the ALJ identified degenerative disk disease, obesity, and carpal tunnel syndrome as severe impairments. AR 20. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 21.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except she can climb and balance. AR 22. She can also stoop, kneel, crouch, and crawl frequently, and she can engage in frequent handling, reaching, fingering, and feeling with bilateral upper extremities. AR 22. The ALJ found that Plaintiff has no past relevant work. AR 24. She noted that Plaintiff could perform a significant number of jobs that exist in the national economy, including cashier, fast food worker, and office helper. AR 25. As a result, Plaintiff was not disabled under the Social Security Act. AR 25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not

disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

### 1. The ALJ Properly Discounted the Opinion of Dr. Paul Rose

In her first issue, Plaintiff contends the ALJ erred in failing to adopt the opinion of her treating physician Dr. Paul Rose. (Doc. 18 at 10-17.) The Commissioner asserts, however, that the ALJ considered all of the medical evidence and properly rejected the treating physician's opinion. (Doc. 25 at 6-8.)

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043. For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the non-examining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, contrary reports from examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Id.* at 751-52.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. 20 C.F.R. § 404.1527(d)(2). Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). Other factors include the supportability of the opinion, consistency with the record as a whole, specialization of the physician, and extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

In reviewing the medical evidence and rejecting Dr. Rose's opinion, the ALJ stated the following:

> The undersigned gives little weight to an assessment completed by the claimant's treating physician to the effect that she is unable to perform even sedentary work.

> The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported. In fact, the conclusions in this assessment are so inconsistent with the treatment records, they are implausible. This assessment is also without substantial support from any other evidence of record.

AR 24.

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Rose's opinion. The Court disagrees. In evaluating the medical evidence, the ALJ gave a detailed summary of the medical records and outlined the basis for her conclusions.

First, the ALJ noted that Dr. Rose prescribed only conservative treatment despite his report that Plaintiff was completely disabled and unable to perform any kind of work. AR 24, 276. Plaintiff testified that in the last twelve months, she visited Dr. Rose on only two occasions. AR 471. During those visits, Dr. Rose prescribed routine medications with no change or alteration based on worsening symptoms. AR 145-146, 187, 197-198, 207-210, 222, 224-225, 228-231, 238, 251-253. It is proper for the ALJ to rely on inconsistencies between a doctor's notes and his opinions about his patient. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ properly found an "incongruity" between the doctor's questionnaire responses and the doctor's medical records and concluding that the doctor's opinion "did not mesh with [Plaintiff's] objective data or history"); *see also, Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's limitations for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record what the basis for these restrictions might be").

The ALJ also noted that the conclusions in Dr. Rose's assessment were without substantial support from any other evidence in the record. AR 24. As mentioned by the ALJ, absent from Plaintiff's longitudinal treatment history is any evidence of acute distress; conversely Plaintiff's treatment notes indicate that she is without any myalgias upon musculoskeletal examination, and she has negative straight leg testing. AR 20, 23. The ALJ also notes that radiographic findings document only mild, age-related degenerative disk disease. AR 23. In terms of Plaintiff's carpal tunnel syndrome, no treatment has ever been documented. AR 23. It is proper for the ALJ to give such unsupported opinions little weight. *See Young v. Heckler,* 803

F.2d 963, 967-68 (9th Cir. 1986) (if instead an opinion is brief and conclusory and lacking in clinical detail, an ALJ may afford it little weight.); *see also, Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole.).

When evaluating the medical evidence, the ALJ gave greater weight to the consultative examining doctor's opinion, Dr. Umer Malik, M.D.  AR 23.  The ALJ found this opinion to be "wholly consistent with the weight of the evidence."  AR 24. The ALJ's reliance on the consultative examining physician's opinion constitutes substantial evidence supporting the ALJ's RFC determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence because it rests on independent examination); *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

In conclusion, this Court finds that the treatment notes and reports from Dr. Rose are unsupported by the record. Therefore, ALJ Havens' assessment of the medical evidence is supported by substantial evidence.

### 2. **The ALJ Properly Considered Plaintiff's Credibility**

In Plaintiff's second issue, she asserts that the ALJ failed to provide clear and convincing evidence for discrediting her subjective symptom testimony. (Doc. 18 at 15-20).  In reply, the Commissioner asserts that the ALJ adequately articulated reasons for discrediting Plaintiff. (Doc. 25 at 8-10).  A review of the record reveals the ALJ properly assessed Plaintiff's credibility.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity, and effect of

symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

After a review of the record, the Court concludes that the ALJ did find and cite to clear and convincing reasons to detract from Plaintiff's credibility as to her own assessment of her subjective symptoms.

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" AR 23.  This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.  Because the record lacked evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended).  When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell,* 947 F.2d at 343. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-46.

Here, the ALJ gave the following reasons for discounting Plaintiff's credibility:

Although the claimant received treatment for the allegedly disabling impairments, that treatment is routine and conservative in nature. She has not received the type of medical treatment one would expect for a totally disabled individual.

Notably, after the injury that reportedly started her unremitting pain, the claimant was cleared to return to modified duty with limited stooping, bending and lifting and frequent position change. This was immediately post-injury and consistent, after over three years of recuperation, with the findings of the internal medicine evaluation conducted post-hearing.

> With regard to her carpal tunnel syndrome, the longitudinal treatment records show a remote diagnosis but do not document significant complaints or treatment for that impairment. In light of the foregoing, the claimant's description of the severity of the pain is so extreme as to appear implausible.
>
> Finally, although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

AR 23.

Thus, the ALJ provided three clear and convincing reasons for rejecting Plaintiff's testimony including: 1) Plaintiff's conservative treatment; 2) inconsistencies between the Plaintiff's reported symptoms and the medical evidence; and 3) inconsistencies related to Plaintiff's reported activities of daily living. These findings are supported by the record.

With regard to Plaintiff's conservative treatment, Plaintiff testified at the hearing that she visited her treating doctor only twice in the last year. AR 471. Although Plaintiff reports that her medications do not help, her physician prescribed the same medication regimen since 2009. AR 226. An ALJ may determine that a claimant lacks credibility based on evidence of conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750-51. Further, a claimant's favorable response to conservative treatment can undermine the claimant's testimony and reports of disabling pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An ALJ may also discredit a claimant's testimony for "lack of consistent treatment" or because the claimant" did not seek any treatment or evaluation" for the condition. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ correctly found that Plaintiff's course of treatment contradicts her complaints of disabling impairments and this was a clear and convincing reason for discounting plaintiff's credibility. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1166 (9th Cir. 2001) (claimant not credible where he "has not participated in any significant pain regimen or therapy program").

Second, the objective medical evidence supports the ALJ's conclusion that Plaintiff's subjective symptom complaints were not entirely credible. Despite Plaintiff's complaints about her constant burning back pain, she consistently appeared in no acute distress and had no

myalgias upon examination. AR 23, 188, 225, 253. It was proper for the ALJ to rely on this evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility). As discussed above, only mild, age-related degenerative disk disease was indicated from the radiographic findings. AR 120, 247. X-rays done in 2009 showed no compression deformity, fracture, or mal-alignment. AR 247. This coupled with the negative straight leg testing and the absence of any documentation concerning treatment or issues with her carpal tunnel demonstrates there is little evidence in the record to support Plaintiff's severe symptom complaints. *See Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms). Accordingly, the Court determines that the ALJ's finding that Plaintiff's subjective symptoms are not supported by the objective medical evidence is supported by the record.

Finally, the ALJ also relied on Plaintiff's activities of daily living to support her credibility determination. An ALJ may rely on a claimant's daily activities to support an adverse credibility determination when those activities: (1) "contradict [claimant's] other testimony"; or (2) "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. Here, the ALJ found that Plaintiff's limited daily activities could not be objectively verified in view of the relatively weak medical evidence. AR 23. The ALJ noted that the degree of limitation in Plaintiff's activities of daily living could not be attributed to her medical condition. AR 23. The ALJ further stated that "the reports do not support the claimant's complaints of a disabling level of pain or illness and indicate that, at the least, she is exaggerating her limitations." AR 24. Based on the foregoing, substantial evidence supports the ALJ's finding that Plaintiff's daily activities contradict her complaints of disabling impairments and this was a clear and convincing reason for

discounting Plaintiff's credibility. *Burch v. Barnhart*, 400 F.3d at 681; *see also Tonapetyan v. Halter,* 242 F.3d at 1148 (claimant properly discredited because of "tendency to exaggerate").

Given the above, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Accordingly, the ALJ's credibility findings are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Toni Pennewell.

IT IS SO ORDERED.

Dated: **June 9, 2015**          /s/ *Barbara A. McAuliffe*
                                 UNITED STATES MAGISTRATE JUDGE